COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Bray and Overton
Argued at Norfolk, Virginia

AUNDRA N. JENKINS
                                            OPINION BY
v.          Record No. 0092-97-1    JUDGE JOSEPH E. BAKER
                                            MAY 5, 1998
FORD MOTOR COMPANY

        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Robert J. Macbeth, Jr. (Matthew H. Kraft;
        Rutter & Montagna, L.L.P., on brief), for
        appellant.

        Barry Dorans (Samuel W. Meekins, Jr.;
        Wolcott, Rivers, Wheary, Basnight & Kelly,
        P.C., on brief), for appellee.


        Aundra N. Jenkins (claimant) appeals the decision of the

Workers' Compensation Commission (commission) denying him

benefits under the Workers' Compensation Act (Act).  He contends

the commission erred in holding that Ford Motor Company

(employer) was not equitably estopped from asserting the statute

of limitations under Code § 65.2-601 to bar his claim for

benefits.  On cross appeal, employer contends no credible

evidence supports the commission's finding that employer

recognized claimant's claim as compensable before the statute of

limitations had expired.  For the reasons that follow, we affirm

the commission's denial of benefits.[1]

        The relevant facts are largely undisputed.  On June 28,

1993, a problem with a hoist forced claimant to lift a bumper to

place it into position on a truck.  As claimant rose from a

_____

        [1]Because we affirm the denial of benefits, we do not
consider the issue raised in employer's cross appeal.

squatting position with the bumper in his hands, he felt a strain in his lower back.  He reported the injury to his foreman and to employer's first aid clinic, where he received treatment through July 1, 1993.

Claimant completed a form provided by employer and received payment for the two days of work he missed in June 1993.  Claimant was not aware of the source of those funds.  Employer's records indicate that the form was an application for benefits under employer's John Hancock insurance plan for short term disability, not employer's workers' compensation program.  However, a notation on the John Hancock application indicates that claimant's injury was viewed as a "possible w[orkers'] c[ompensation] case."  On July 23, 1993, employer filed with the commission Form 45A, a report of minor injuries, that included claimant's June 28, 1993 accident.  Claimant did not recall having received an informational pamphlet about his rights under the Act from the commission but "[could not] be sure" he did not receive one.  The commission's opinion[2] adjudicated the claim as

[2]The commission made the following findings:

> The employer reported this accident to the Commission as required on July 23, 1993.  Our records indicate that an employee handbook was mailed to the claimant at his last known address, but he did not recall receiving it.  He acknowledged that the Commission's records contained his correct mailing address, and there is no evidence that this booklet was returned which would have been noted in our records.

(Citation omitted).

- 2 -

if claimant had received the pamphlet.

In April 1994, claimant experienced pain in his leg and sought outside medical treatment. The examining physician told claimant he thought the pain was caused by claimant's back. In May 1994, claimant returned to employer's clinic and reported recurring back problems; he received work restrictions and medication. In August 1994, he again returned to the clinic and requested referral to an outside physician. Mitchell Ott, employer's workers' compensation administrator, offered claimant a panel of physicians, and claimant chose Dr. Frank Burns, an orthopedic surgeon. Burns examined claimant on August 29, 1994, recorded a history of the June 28, 1993 injury, and diagnosed claimant as suffering from a chronic lumbar strain. Dr. Burns recommended a back exercise program and prescribed anti-inflammatory medication. Claimant attended one physical therapy session for back exercise training. When claimant returned to Dr. Burns on September 12, 1994, he reported his back was "doing better," and Burns instructed him to return "as necessary."

Claimant received no additional treatment until February 16, 1995, when he reported to employer's clinic that his back was stiff due to his June 1993 injury. He was given pain medication. On May 2 and 3, 1995, he was seen in the clinic, reporting a two-week history of back spasms radiating down his leg. He saw employer's clinic physician and received additional medication.

He returned on May 4, 1995, but employer's physician was unavailable. Apparently, claimant then sought outside treatment, underwent an MRI, and was referred to Dr. Isabelle Richmond, a neurosurgeon. Dr. Richmond examined claimant on June 6, 1995, reviewed claimant's lumbar MRI, and recommended surgery.

Claimant returned to Ott on June 9, 1995, reported his visit with Dr. Richmond, and asked employer to authorize Richmond's care as necessitated by his 1993 injury. Ott had no reports from Dr. Richmond, and because Dr. Burns was claimant's treating physician for his 1993 injury, Ott directed claimant to return to Dr. Burns for evaluation. Ott also wrote a letter to Dr. Burns asking Dr. Burns to provide a report to "assist in a determination of whether employer will treat this [claim] as governed under the [Act]." On June 28, 1995, Burns examined claimant. He noted that claimant suffered from a herniated disc, "that this disc is probably related to his original injury, and is a continuation of the same injury."

On June 29, 1995, Ott received Dr. Burns' recommendation and prepared a formal first report of injury, dated June 30, 1995, which he filed with the commission. In addition, because Ott was going to be out of the office the following week, he contacted Karen Gibson, a rehabilitation nurse with Resource Opportunities, to assist claimant in scheduling an appointment with a panel neurosurgeon. Claimant chose Dr. Warren Foer, and Gibson scheduled an appointment for July 11, 1995. Dr. Foer agreed with

the diagnosis of herniated disc and recommended surgery. Foer believed this process began with the original injury of June 28, 1993.

On July 12, 1995, Ott made a notation in employer's computer system that employer would accept claimant's claim as compensable under the Act and would reimburse John Hancock for amounts already paid. On July 18, 1995, employer began voluntarily to send claimant compensation checks to cover his time out of work from June 6, 1995, forward. Compensation payments were made for various periods through October 8, 1995. Ott acknowledged that employer never prepared or submitted a Memorandum of Agreement for these payments. Ott testified that he never told claimant whether he thought the claim was compensable. Claimant did not contradict that statement.

Ott acknowledged that employer hired Karen Gibson to monitor claimant's progress. Gibson accompanied claimant to his medical appointments and reported her activities to employer. Ott said this was something employer did "when we have an individual who has a pretty serious injury and we are . . . paying workers' compensation benefits."

On September 15, 1995, more than two years after his injury occurred, claimant wrote the commission denying knowledge that Code § 65.2-601 required him to file a claim for compensation.

Following a hearing on claimant's application for benefits, the deputy commissioner ruled that the tolling provisions of Code

§ 65.2-602 <u>did not apply</u> to toll the statute of limitations because (1) employer's filing of Form 45A constituted the filing of a first report as required under that code section and (2) that filing caused the commission to send claimant its workers' compensation guide.  However, he also held that the doctrine of equitable estoppel applied to prevent employer from asserting the statute of limitations in Code § 65.2-601 as a bar to compensability of the claim.

Employer appealed to the full commission, contending in its written statement that the deputy had improperly applied the doctrine of equitable estoppel.  Claimant, in his written statement, argued that the doctrines of both equitable estoppel and imposition supported the deputy's ruling.[3]  Upon its review, the commission found that "[t]he employer clearly recognized and accepted this claim as compensable before the statute of limitations expired on June 28, 1995," but that the claimant failed "to establish that he was misled by the employer regarding the filing of a claim, to his detriment."

---

[3]When employer appealed the deputy commissioner's decision holding it was estopped from asserting the statute of limitations provisions of Code § 65.2-601, claimant did not appeal the deputy's finding that the tolling provisions of Code § 65.2-602 were not applicable and, in fact, asserted that the deputy commissioner's opinion "should be fully affirmed."  In addition, the commission did not address that issue <u>sua</u> <u>sponte</u>.  <u>See</u> <u>Brushy</u> <u>Ridge Coal Co. v. Blevins</u>, 6 Va. App. 73, 78, 367 S.E.2d 204, 206 (1988); Rule 2(A).  Therefore, we cannot consider that issue on appeal.  <u>See</u> Rule 5A:18.  If claimant wanted that issue reviewed by the commission, he should have specified it and taken exception to the deputy's finding thereon.

## Equitable Estoppel

Claimant contends that employer was equitably estopped from asserting the statute of limitations and that the commission erred in holding estoppel did not apply. To prove estoppel, a claimant must show by "clear, precise and unequivocal evidence" that he relied to his detriment upon an act or statement of employer or its agent to refrain from filing a claim within the statutory period. See Rose v. Red's Hitch & Trailer Servs., Inc., 11 Va. App. 55, 59-60, 396 S.E.2d 392, 395 (1990). Estoppel does not require "proof that the representation [was] false or that the employer intend[ed] to induce reliance. The employee's case is made if the 'representation . . . did in fact induce the [employee] to refrain from filing [a claim].'" Cibula v. Allied Fibers & Plastics, 14 Va. App. 319, 325, 416 S.E.2d 708, 711 (1992) (quoting Stuart Circle Hosp. v. Alderson, 223 Va. 205, 208, 288 S.E.2d 445, 446 (1982)). However, an employer has no affirmative duty under the Act to inform an injured employee of the need to file a claim with the commission within the statutory period, see Alderson, 223 Va. at 208, 288 S.E.2d at 446, and it is well settled that an employer is not estopped as a matter of law from relying on the limitation period merely because it voluntarily paid a claimant's medical bills. See id. at 209, 288 S.E.2d at 447; Bowden v. Newport News Shipbuilding & Dry Dock Co., 11 Va. App. 683, 686-87, 401 S.E.2d 884, 886 (1991).

The commission found that claimant failed to prove he relied on any action or representation of the employer. In so doing, the commission noted claimant did not testify that he relied on any payments by the employer and did not offer any explanation as to why he allowed the statute of limitations to expire other than that he thought his injury was a "strain" and that he was not "hurt." The commission found that the only evidence bearing on the estoppel issue was the employer's computer note indicating acceptance of the injury as compensable and that nothing indicated claimant's awareness of that note.[4] Because credible evidence supports these findings, we are bound by them. See Code § 65.2-706; Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510 (1983). "Consequently, unless we can conclude, as a matter of law, that other evidence sustains [claimant's] burden of proving that representations made by the employer induced [claimant] to refrain from filing a claim with the commission, we must affirm the [decision]." See Cheski v. Arlington County Pub. Schs., 16 Va. App. 936, 939, 434 S.E.2d 353, 355 (1993).

Here, as in Cheski, claimant contends that employer's "course of conduct" induced him not to file a claim with the commission. See id. The course of conduct he cites consists of

---

[4]In fact, that note was not even created until after the statute of limitations had expired and could not, therefore, have induced claimant to refrain from filing a timely claim, even if he had been aware of its existence.

employer's (1) extensive exercise of control over his medical treatment, including offering him a panel of physicians, directing him to return to that panel physician after Dr. Richmond had recommended surgery, and hiring rehabilitation nurse Karen Gibson to oversee claimant's care; (2) issuance of voluntary workers' compensation payments beginning June 6, 1995, and continuing through October 8, 1995, including a computer notation that the claim was accepted; (3) failure to file a memorandum of agreement for those voluntary payments; and (4) alleged failure to file a first report of injury when claimant's medical bills exceeded $1,000.

We hold that employer's conduct in "controlling" claimant's medical treatment did not, as a matter of law, induce claimant to believe he was not required to file a claim. Ott did not contact rehabilitation nurse Gibson about claimant's case until June 30, 1995, _after_ the statute of limitations had expired on June 28, 1995. Gibson's involvement, therefore, could not have induced claimant to refrain from filing a timely claim. Moreover, as we held in _Cheski_, an employer's actions in requiring a claimant to use a panel physician, seek approval before changing physicians, and participate in vocational rehabilitation assessments "are no more than those one would expect from an employer conscientiously complying with the [Act]. They did not, as a matter of law, induce the employee to believe that [he] did not need to file a claim with the commission." _Id._ at 939-40, 434 S.E.2d at 356.

Similarly, we hold employer's notation that the claim was accepted and voluntary payment of compensation beginning June 6, 1995, did not induce claimant to refrain from filing a timely claim.  As found by the commission and supported by the record, no evidence indicates claimant was aware that employer was recognizing his claim as compensable under the Act or that any checks he was receiving were denominated workers' compensation benefits rather than short term disability payments.  In addition, and more importantly, neither of these events occurred until <u>after</u> the statute of limitations had expired on June 28, 1995.  Employer's notation of compensability was not made until July 12, 1995, and its first payment of workers' compensation to claimant--covering the period from June 6 to July 16, 1995--was not issued until July 18, 1995.

The record contains no evidence that employer's failure to file a memorandum of agreement or formal first report of injury induced claimant to refrain from filing a timely claim.  As set out above, employer did not initially accept the flare-up as compensable and did not begin voluntary payments of compensation until after the statute of limitations expired; therefore, employer's duty to file a memorandum of agreement evidencing those payments also did not arise until after the expiration of the statute of limitations.  <u>See</u> Code § 65.2-701.

Here, the record contains no indication that employer had a duty to file a formal first report of injury before the statute

of limitations expired.  Employer filed a Form 45A report of minor injury, and the duty to file a formal First Report arises only when the medical expenses paid by employer for claimant exceed $1,000.  See Code § 65.2-900; VWC (commission) Form Nos. 3, 45A (rev. 10/1/91).  The evidence does not prove that medical costs exceeded $1,000 before the statute expired.[5]  Moreover, although employer's filing of a memorandum of agreement or first report may have triggered the mailing of correspondence from the commission regarding claim filing, nothing in the record indicates that employer's failure to file either of these documents induced claimant to refrain from filing a claim.  See Bristol Newspapers, Inc. v. Shaffer, 16 Va. App. 703, 708, 432 S.E.2d 23, 26 (1993) (holding, under doctrine of estoppel, that mere "failure by the employer to report the accident in accordance with Code § 65.2-900 neither tolls the statute [of limitations] nor precludes the defense [of its expiration]"); see also Alderson, 223 Va. at 208, 288 S.E.2d at 447 (rejecting allegation that employer's failure to notify commission of payments, which would have triggered commission's notice to her to file claim, proved estoppel).

Finally, the record supports the commission's finding that employer's filing of Form 45A caused the commission to send a

---

[5]Prior to that date, claimant's only outside medical treatment covered by workers' compensation involved two visits to treating physician Burns and one session with a physical therapist.

workers' compensation guide to claimant.  Although claimant could not recall with certainty whether he received it, nothing in the record shows that he did not.  Code § 65.2-201(D) requires the commission to (1) publish a "guide . . . which informs an injured employee of his rights under [the Act]," and (2) provide a copy of the guide to an employee when it receives notice of his accident.  Here, the commission acknowledged this procedure and confirmed that its records indicated a guide was sent to claimant at his correct mailing address and was not returned.  See <u>Avery v. County Sch. Bd.</u>, 192 Va. 329, 334-35, 64 S.E.2d 767, 771 (1951) (noting presumption that clerk of trial court properly performs official duties imposed by statute or rule of court); <u>Villwock v. Insurance Co. of N. Am.</u>, 22 Va. App. 127, 134 n.4, 468 S.E.2d 130, 134 n.4 (1996) (discussing presumption that correspondence properly mailed is received by addressee and noting that denial of receipt by addressee raises issue for fact finder).

Therefore, we hold that credible evidence supports the commission's finding that employer's actions did not induce claimant to refrain from filing a timely claim for compensation.

<u>Imposition</u>

The doctrine of imposition also does not apply to toll the statute of limitations in this case.  Imposition "'empowers the commission in appropriate cases to render decisions based on justice shown by the total circumstances even though no fraud,

mistake or concealment has been shown.'"  <u>Odom v. Red Lobster # 235</u>, 20 Va. App. 228, 234, 456 S.E.2d 140, 143 (1995) (quoting <u>Avon Prods., Inc. v. Ross</u>, 14 Va. App. 1, 7, 415 S.E.2d 225, 228 (1992)).  "The doctrine focuses on an employer's or the commission's use of superior knowledge or of experience with the Workers' Compensation Act or use of economic leverage, which results in an unjust deprivation to the employee of benefits warranted under the Act."  <u>Butler v. City of Va. Beach</u>, 22 Va. App. 601, 605, 471 S.E.2d 830, 832 (1996).

Whether an employee has received a "blue letter" or guide outlining commission procedures and the claim filing requirement is one circumstance to be considered in evaluating the totality of the circumstances.  <u>See</u> <u>Odom</u>, 20 Va. App. at 235, 456 S.E.2d at 143.  However, imposition, like equitable estoppel, "does not apply where a carrier's or employer's [actions] are consistent with an endeavor to comply with the Act."  <u>Id.</u> at 234, 456 S.E.2d at 143 (citing <u>Cheski</u>, 16 Va. App. at 940, 434 S.E.2d at 356).

Such actions include:
> (1) telling [claimant] that certain documents--a report of the accident, an acknowledgement that [claimant] received a list of approved panel physicians, and the employer's first report of accident--would be filed with the commission, (2) requiring [claimant] to use a panel physician, (3) requiring her to seek approval before changing physicians, (4) requiring her to participate in vocational rehabilitation assessments, . . . and (7) recognizing that she was entitled to workers' compensation benefits.

Cheski, 16 Va. App. at 939-40, 434 S.E.2d at 355.

Here, the acts of employer which fail to permit application of the doctrine of estoppel also do not permit application of the doctrine of imposition. Although expiration of the statute of limitations on this claim was unfortunate, it did not result from employer's or the commission's use of superior knowledge or economic leverage. To create an exception to the bar of the statute of limitations under circumstances such as these would, in effect, allow the exception to swallow the rule.

For these reasons, we hold that neither the tolling provisions of Code § 65.2-602 nor the doctrines of equitable estoppel or imposition apply to circumvent expiration of the statute of limitations in this case. Accordingly, we affirm the commission's denial of benefits.

Affirmed.