**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MOBIL OIL CORPORATION,
<u>Plaintiff-Appellee,</u>

v.                                                                                   No. 99-2093

EARHART PETROLEUM, INCORPORATED,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-98-968-A)

Argued: March 2, 2000

Decided: May 3, 2000

Before WILKINSON, Chief Judge, and WILLIAMS
and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Alfred John Weisbrod, WEISBROD LAW OFFICES,
Dayton, Ohio, for Appellant. Thomas Collier Mugavero, MONTE-
DONICO, HAMILTON & ALTMAN, P.C., Chevy Chase, Maryland,
for Appellee. **ON BRIEF:** Glenn H. Silver, SILVER & BROWN,
Fairfax, Virginia, for Appellant. Edward B. Ruff, PRETZEL &
STOUFFER, Chicago, Illinois, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mobil Oil Corp. (Mobil) sued Earhart Petroleum, Inc. (Earhart) for breach of a distributor agreement, and Earhart counterclaimed. The district court granted summary judgment to Mobil and awarded it attorney's fees and costs under the agreement. Earhart appeals, and we affirm.

I.

Earhart, an Ohio corporation, entered into an agreement to be a nonexclusive distributor of petroleum products for Mobil, a New York corporation with its principal place of business in Fairfax, Virginia. Earhart and Mobil did business under the agreement for a little less than two years. A problem developed when Mobil became concerned that Earhart was trying to switch Mobil customers to a competitor's brand, in breach of the distribution agreement. After Earhart failed to allay those concerns, Mobil terminated the distribution agreement on January 25, 1996. On February 12, 1996, Mobil sent a letter to Earhart's customers advising them that Earhart was no longer an authorized seller of Mobil products. At that time Earhart was in possession of Mobil products valued somewhere between $104,000 and $500,000, and Earhart owed Mobil approximately $280,000.

The distribution agreement provided that if Earhart was indebted to Mobil at termination, "then Mobil [might] apply the value of Distributor's then current inventory of Mobil Products, in good condition, bought from Mobil, against such indebtedness." Earhart claims that it asked Mobil to repurchase its inventory and credit its account accordingly and that Mobil agreed to audit the inventory for that purpose, but that Mobil failed to follow through on its commitment. See Earhart Br. at 6. In its papers, Mobil denies that Earhart made the request or that Mobil ever agreed to conduct an audit.[1] In any event, no audit

_____

[1] At oral argument, counsel for Mobil represented that Mobil attempted to conduct an audit, but that Earhart had refused Mobil access to its prop-

2

ever took place. Instead, on February 27, 1996, Earhart sold a portion of its Mobil inventory to a waste hauler. The balance of the inventory was later sold at a deep discount or discarded. Earhart did not give Mobil any notice that it intended to dispose of the remaining inventory; indeed, Mobil learned that the inventory had been sold off or destroyed only through discovery in the ensuing litigation.

On July 8, 1998, Mobil sued Earhart in federal court in the Eastern District of Virginia, alleging that Earhart had breached the distribution agreement by attempting to convert Mobil customers to a competing brand and by failing to pay the $280,000 due. Earhart counterclaimed on October 13, 1998, asserting that Mobil had breached the contract by giving preferential terms to Earhart's direct competitors and by failing to credit Earhart for its Mobil inventory.[2]

The district court dismissed Earhart's first claim (dealing with Mobil's alleged preference of Earhart's competitors in the Mobil line), holding that the claim had not been brought within twelve months of the date that it arose, as required by the distribution agreement.[3] The district court also granted Mobil partial summary judgment on its contractual claim for Earhart's failure to pay for products

---------------------------------------------------------------------

erty. For purposes of this decision, we assume that Mobil agreed to audit Earhart's inventory and failed to do so.

**2** Earhart also alleged that Mobil had engaged in discriminatory pricing. That claim was dismissed by stipulation.
**3** Section 9.2 of the agreement reads:

> Any other claim by Distributor of any kind [other than one having to do with defects or shortages], based on or arising out of or in connection with this Agreement or otherwise, shall be waived and barred unless Distributor gives Mobil written notice within sixty (60) days after the event, action or inaction to which such claim relates. Notwithstanding notice by Distributor to Mobil, any claim by Distributor to Mobil, unable to be resolved sooner by amicable agreement between Distributor and Mobil, shall be waived and barred unless asserted by the commencement of a lawsuit in a court of competent jurisdiction within twelve (12) months after the event, action, or inaction to which such claim relates.

received, but the court noted that the amount of liability would depend on Earhart's right to a setoff under the second part of its counterclaim. As to the second part of the counterclaim, the district court concluded that genuine issues of fact were in dispute and set the matter for trial.

On the morning of trial, Mobil filed eight motions, all characterized as motions in limine. Two of these were in effect summary judgment motions because they argued that Earhart was not entitled to recovery as a matter of law. Although counsel for Earhart had not been served with any of the motions until that morning, the district court heard argument on the motions that dealt with the merits of Earhart's claim. Mobil argued that Uniform Commercial Code § 2-706(3), Va. Code Ann. § 8.2-706(3), required Earhart to give Mobil notice before selling or destroying goods that Mobil was obligated to buy, and the district court agreed. Ruling from the bench, the court granted judgment for Mobil in the amount of $279,402.42, dismissed the jury, and invited Earhart to brief the issue by filing a motion to amend the judgment. Earhart did so, and the district court stood by its original decision.

Finally, Mobil claimed a contractual right to "all costs and reasonable attorney's fees" associated with its lawsuit to collect the debt from Earhart. The court awarded Mobil $10,915.62 in costs and $56,911.40 in fees. Earhart appeals the district court's dismissal (under Va. Code Ann. § 8.2-706(3)) of its counterclaim for credits, the dismissal (for untimeliness) of its counterclaim for breach of contract, and the award of costs and fees. We affirm the district court on all issues.

II.

Assuming that Earhart had a contractual right to return its inventory to Mobil for credit, the district court held that Earhart was a "seller" of goods.[4] As a result, Earhart could pursue a seller's reme-

_____

[4] Section 11.4.4 of the distribution agreement provides that:

> Mobil may apply the value of Distributor's then current inventory of Mobil Products, in good condition, bought from Mobil,

4

dies (sell for what it could get and sue for cover), subject to the requirement of U.C.C. § 2-706(3), Va. Code Ann. § 8.2-706(3), that notice be given to the buyer prior to a private sale. Since it found that Earhart never gave that notice, the district court awarded judgment to Mobil as a matter of law.**5** Earhart argues that it was never a seller under the terms of the U.C.C. and that a trial was necessary to resolve disputes of material fact concerning the notice that it provided Mobil. We reject both arguments.

When a buyer wrongfully rejects or revokes acceptance of goods, an aggrieved seller is entitled to pursue certain remedies, including

_____

> against such indebtedness. The value of the inventory shall be determined at Mobil's sole discretion and shall be based on the original sales price of the Products from Mobil to Distributor less any transportation costs to return said Products to Mobil.

Although the language of this section is permissive ("Mobil <u>may</u> apply . . ."), the district court assumed that if Mobil had represented that it would credit Earhart's account, as Earhart alleged, Mobil had exercised an option and bound itself as a buyer.

**5** We note again that Mobil's "motion in limine" on this issue was a dispositive motion brought on the morning of trial without any prior notice to Earhart. Mobil claims that it brought the motion as soon as possible after learning that Earhart had destroyed the last of its Mobil inventory. While that may be so, Earhart's counsel was placed at a clear disadvantage by the lack of notice because he was forced to defend against a motion for summary judgment with no preparation whatsoever. <u>See</u> Fed. R. Civ. P. 56(c) (motion for summary judgment "shall be served at least 10 days before the time fixed for the hearing"). Counsel for Earhart asked for time to respond, but the district court denied the request. The court stated that it would be a pointless exercise to proceed with the jury trial if Mobil's argument was correct and that Earhart could file a motion to alter or amend the judgment under Fed. R. Civ. P. 59. We emphasize that the possibility of a Rule 59 motion post-judgment should not be considered as an acceptable substitute for the important requirement of adequate notice before a hearing is held on a motion for summary judgment. Nevertheless, in this case Earhart did file a Rule 59 motion, and the district court gave it due consideration. Accordingly, we conclude that any prejudice from the lack of notice and the premature decision was cured.

We review the judgment in favor of Mobil de novo.

5

reselling the goods to a third party and recovering damages from the buyer. See Va. Code Ann. § 8.2-703(d). A seller who chooses resale and cover as its remedy must comply with the requirements of Va. Code Ann. § 8.2-706. Particularly relevant in this case is § 8.2-706(3), which states that "[w]here the resale is at private sale the seller must give the buyer reasonable notification of his intention to resell." A public sale is an auction; a private sale occurs through direct solicitation and negotiation or through use of a broker. See U.C.C. § 2-706 cmt.4. It is undisputed that Earhart effected a private sale when it sold its Mobil inventory at a discount or to a waste hauler. What is disputed is whether Earhart may be characterized as a seller, with the result that it would be subject to § 8.2-706(3).

A seller is "a person who sells or contracts to sell goods." Va. Code Ann. § 8.2-103(d). A "sale" is "the passing of title from the seller to the buyer for a price." And, a "person in the position of a seller" includes "anyone who . . . holds a security interest or other right in goods similar to that of a seller." Id.§ 8.2-707(1). Here, Earhart had title to its inventory of Mobil products and claims that it had a contractual right to exchange that inventory for valuable consideration, that is, a credit against its debt to Mobil. In addition, the agreement required Earhart to pay the costs of delivering the inventory back to Mobil. As the district court concluded, "[a]lthough somewhat atypical, this arrangement is the very essence of a sales contract, in which no doubt exists that Earhart is the seller and Mobil the buyer." We agree with the reasoning of the district court. Moreover, even if Earhart was not a seller outright, but only "a person in the position of a seller," the notice requirement of § 8.2-706 would still apply. See Va. Code § 8.2-707(2) (person in position of a seller has seller's remedies, including remedies under § 8.2-706). Mobil was entitled to reasonable notice of Earhart's intention to make a private sale so that it could protect itself if Earhart attempted to sell the goods at a steep discount and then sue for the difference between the sale price and the contract price. That is just what happened here. We therefore hold that Earhart was a "seller" under Virginia law and was required to give notice to Mobil before it sold its Mobil inventory at a private sale.

Furthermore, any constructive notice that Earhart provided of its intent to sell was insufficient as a matter of law. Earhart conceded that it never directly notified Mobil of its intention to sell off its inventory.

6

Instead, Earhart argued that once Mobil refused to repurchase the inventory, it was on constructive notice that Earhart would resell the petroleum products elsewhere. This is not the "reasonable notification" contemplated by § 8.2-706(3). The breaching buyer's mere failure to accept the goods does not place the buyer on notice that the seller will choose to make a private sale and seek cover as its remedy. Even if the circumstances are such that the seller clearly has no remedy except resale, reasonable notification is necessary where the seller resorts to a private, rather than a public, sale. See 8.2-706(3), (4). A contrary rule would place a breaching buyer on constructive notice by reason of the breach alone, rendering § 8.2-706(3) a virtual nullity. Although the seller need not provide details of the time and place of a private sale, see U.C.C. § 2-706 cmt.8, it must provide the buyer with reasonable notification of its intent to make such a sale. Earhart clearly did not give this notice, and it therefore cannot recover damages under § 8.2-706.**6**

We affirm the district court's award of summary judgment to Mobil on Earhart's counterclaim for a setoff based on its inventory of Mobil products.

III.

On October 13, 1998, Earhart filed its counterclaim asserting that Mobil breached the distribution agreement by giving preferential terms to Earhart's competitors (who also sold Mobil products). The district court concluded that the claim arose no later than January 25, 1996, when Mobil terminated its agreement with Earhart. Since Earhart had failed to bring its claim for this alleged breach within twelve months of the date it arose, as required by the distribution agreement, the district court awarded summary judgment to Mobil. Earhart argues that this contractual limitations clause is unconscionable because it applies only to the distributor, while Mobil may take advantage of the full five-year statute of limitations provided by Vir-

_____

**6** A seller that cannot recover under § 8.2-706 is limited to the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages. See Va. Code Ann. § 8.2-708. Earhart has not asserted any right to damages under § 8.2-708.

ginia law. See Va. Code Ann. § 8.01-246(2). We do not find the limitations clause to be unconscionable.

"[U]nconscionability deals primarily with a grossly unequal bargaining power at the time the contract is formed." Envirotech Corp. v. Halco Eng'g, Inc., 364 S.E.2d 215, 220 (Va. 1988). Earhart has offered no evidence that it suffered from a gross disparity of bargaining power or that Mobil engaged in oppressive conduct. Moreover, Virginia law defines an unconscionable contract as"one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other. The inequality must be so gross as to shock the conscience." Management Enters., Inc. v. Thorncroft Co., 416 S.E.2d 229, 231 (Va. 1992) (internal quotations omitted). While the disparity in the time allowed to file suit certainly favors Mobil, the inequality is not so great as to shock the conscience.

Earhart also suggests that Mobil should be estopped from invoking the limitations clause. The grounds for estoppel are not entirely clear, but Earhart appears to argue that Mobil offered to conduct an audit of the inventory, never did so, and then filed its own suit after the one-year limitation period had passed. The record does not support this contention. At best, the record indicates that the parties were negotiating toward settlement and that Earhart therefore assumed that Mobil would not bring suit. Absent a more explicit promise or representation from Mobil that it would not sue, Earhart cannot show grounds for estoppel. See Jenkins v. Ford Motor Co., 498 S.E.2d 445, 449 (Va. Ct. App. 1998).

We affirm the district court's award of summary judgment to Mobil on Earhart's claim that Mobil breached the distribution agreement by giving preferential treatment to Mobil dealers who competed with Earhart.

IV.

The distribution agreement states that "in the event that Distributor's account is placed for collection, it shall pay all costs and reasonable attorney's fees associated with such collection proceedings if Mobil prevails." The district court awarded Mobil $56,911.40 in fees and $10,915.62 in costs. Earhart appeals, arguing that the award is

8

excessive and unsupported by the language of the agreement. Specifically, Earhart claims (1) that Mobil unreasonably hired Chicago counsel to conduct litigation in Virginia, incurring unnecessary expenses for travel and for retention of local counsel, (2) that costs and fees that were incurred before litigation commenced are not"associated" with the collection proceeding, and (3) that the district court improperly included expenses for meals, travel, and delivery services in its calculation of "costs." We affirm the award in its entirety.

The district court found that hourly rates and the time expended on the case were reasonable. There is no reason to believe that the work performed by local counsel (which was required) was in any way duplicative of the work performed by Chicago counsel. While we might question Mobil's need to retain out-of-state counsel for a case tried in Mobil's home state, we cannot say that the decision to retain such counsel was unreasonable or that the district court abused its discretion in awarding Mobil its resulting fees and costs. With respect to the costs and fees incurred before litigation commenced, we agree with the district court that such costs are "associated" with this proceeding. See In re General Motors Corp., 110 F.3d 1003, 1024 (4th Cir. 1997) ("Surely research performed prior to a case being filed is recoverable as part of the attorney's fees for that case."). Finally, Mobil is entitled to costs and fees by contract, not by statute. That contractual provision is not subject to the narrow construction that applies to Virginia's statute providing for the award of costs and fees. See Lansdowne Development Co., L.L.C. v. Xerox Realty Corp., 514 S.E.2d 157, 162-63 (Va. 1999). As the district court recognized, the expenses claimed by Mobil here are normally borne by a party in the course of litigation. Earhart has not offered any reason for us to adopt a narrow construction of the contract term "costs," and we decline to do so here.

V.

For the reasons stated, the judgment of the district court is

AFFIRMED.

9